IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-02928-PAB
(Bankruptcy No. 10-33960 MER, Chapter 7)

In re:

ALEXANDER N. KIM and
LAURA J. FOSTER,

      Debtors.

---

ALEXANDER N. KIM and
LAURA J. FOSTER,

      Appellants,

v.

JP MORGAN CHASE BANK, N.A., and
DOUGLAS E. LARSON, Chapter 7 Trustee,

      Appellees.

---

**ORDER**

---

This is an appeal by debtors Alexander N. Kim and Laura J. Foster ("debtors")

from the November 15, 2016 order [Docket No. 7-15 at 172-182] of the United States

Bankruptcy Court for the District of Colorado (the "bankruptcy court"). The Court's

jurisdiction is based on 28 U.S.C. § 158(a).[1]

---

[1]On March 30, 2017, appellants filed a request for oral argument pursuant to
Fed. R. Bankr. P. 8019. Docket No. 22. Pursuant to Rule 8019, oral argument must be
allowed unless "the facts and legal arguments are adequately presented in the briefs
and record, and the decisional process would not be significantly aided by oral
argument." Fed. R. Bankr. P. 8019(b)(3). After reviewing the parties' submissions, the
Court has determined that oral argument is not necessary for the resolution of this
appeal. Accordingly, appellants' request for oral argument is denied.

## I. BACKGROUND[2]

Debtors own real property located at 69 Vista High Drive, Carbondale, CO 81623 ("the Property"). R. V at 808, p. 167, ll. 12-14.[3] On February 22, 2008, debtor Kim executed a note in the amount of $2,000,000 ("the Note") payable to Washington Mutual Bank, FA ("Washington Mutual"). *See* Docket No. 14-1. The note was secured by the Property through a Deed of Trust, which was recorded in Eagle County, Colorado on February 29, 2008. R. IV at 293, ¶ 2-3. Washington Mutual later endorsed the Note in blank. *See* Docket No. 10-1 at 27.

Prior to these bankruptcy proceedings, Washington Mutual was closed by the Office of Thrift Supervision and the FDIC was appointed as receiver over Washington Mutual. *Id.* at 294, ¶ 6. JP Morgan Chase Bank, N.A. ("Chase") purchased the Note and associated loan through a Purchase and Assumption Agreement ("PAA") with the FDIC. *Id.*, ¶ 7. Chase claims that the FDIC transferred the Note to Chase in the summer of 2009. *See* R. V at 737, p. 96, ll. 4-11; *id.* at 758-59, pp. 117-118, ll. 19-25, 1-18.

On September 21, 2010, debtors filed for bankruptcy under Chapter 11. *See* R. I at 4-6. On November 12, 2010, Chase filed a proof of claim. Docket No. 10-1. Chase filed an amended proof of claim on February 27, 2013. Docket No. 10-2. Chase attached a copy of the Note to the proof of claim filed on November 12, 2010. *See*

---

[2] The following facts are undisputed unless otherwise noted.

[3] The Record consists of seven volumes. *See* Dockets Nos. 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 7-8, 7-9, 7-10, 7-11, 7-12, 7-13, 7-14, 7-15, 7-16, 8-1. The Court refers to the Record by reference to "R. [volume number] at [page of record]." Accordingly, a citation to page 800 of Volume V is written "R. V at 800."

Docket No. 10-1 at 24.

On May 9, 2013, the bankruptcy court ordered that debtors' case be converted to a Chapter 7 bankruptcy. *See* R. I at 87. Chase subsequently received relief from the automatic stay to foreclose on the Property. *See* R. II at 14-15. In 2014, Chase initiated foreclosure proceedings against the Property. R. IV at 294, ¶ 18. In the 2014 foreclosure proceedings, Chase filed a qualified holder statement pursuant to Colo. Rev. Stat. § 38-38-101(1)(b)(II). *See* Docket No. 14-4. Chase claims that, during the 2014 foreclosure proceedings, its counsel discovered that the original note was missing. *See* Docket Nos. 10-13, 10-14, 10-15, 10-16. On July 29, 2014, Chase withdrew its motion for an order authorizing sale. Docket No. 11-1. On November 11, 2015, Chase acquired a lost instrument bond in the amount of $3,000,000. Docket No. 14-2; R. V at 802-803, pp. 161-162, ll. 17-25, 1-10.

On September 3, 2015, debtors filed an objection to Chase's claim in the bankruptcy proceedings. *See* R. III at 129-133. Debtors argued that Chase's claim is barred because Chase was not in possession of the Note. *Id.* at 132, ¶ 12. On June 21, 2010, the bankruptcy court held a two-day evidentiary hearing on debtors' objection to Chase's claim and on debtors' request for attorney's fees and costs as a sanction for Chase's conduct in the bankruptcy proceedings.[4] *See* R. V at 412-846.

After the hearing, the bankruptcy court, in a written order, found that (1) the Note is lost; (2) pursuant to Section 4-3-309 of the Colorado Uniform Commercial Code,

---

[4]The bankruptcy court awarded debtors $22,841.03 in attorney's fees as a sanction for Chase's failure to respond to discovery requests and follow court orders. R. VI at 179-182. That portion of the bankruptcy court's opinion is not before the Court.

Colo. Rev. Stat. § 4-3-309, Chase was in possession of the original Note and was entitled to enforce it when the Note was lost; and (3) under the Colorado foreclosure statutes, the lost instrument bond that Chase posted provided debtors adequate protection from being required to pay twice on the Note. *See* R. VI at 175-178.

On November 29, 2016, debtors filed a timely notice of appeal. R. VI at 185-187. Debtors raise eight issues on appeal, Docket No. 18 at 7-9; however, many of the issues raised by debtors overlap. Debtors' issues fall into two categories: (1) the bankruptcy court's factual findings were not supported by the evidence; and (2) the bankruptcy court's legal rulings were improper. *Id.*

## II. STANDARD OF REVIEW

A party may appeal the "final judgments, orders, and decrees" of a bankruptcy court to either the district court or a bankruptcy appellate panel. 28 U.S.C. §§ 158(a), (c)(1). The Court reviews the bankruptcy court's legal determinations de novo. *See In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010). The Court also reviews de novo mixed questions of law and fact that primarily involve legal issues. *See In re Wes Dor Inc.*, 996 F.2d 237 (10th Cir. 1993). The bankruptcy court's factual findings, including findings regarding credibility, are reviewed for clear error. *See DSC Nat'l Props., LLC v. Johnson (In re Johnson),* 477 B.R. 156, 168 (B.A.P. 10th Cir. 2012); *In re Baldwin*, 593 F.3d at 1159; *Rinehart, Blair, & Mask v. Sharp (In re Sharp)*, 361 B.R. 559, 564-65 (B.A.P. 10th Cir. 2007). The reviewing court must defer to the facts found by the bankruptcy court "unless it is without factual support in the record or, after examining all the evidence, we are left with a definite and firm conviction that a mistake has been

made." *In re Johnson*, 477 B.R. at 168 (quotations omitted). If, however, a "lower court's factual findings are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to *de novo* review." *Id.*

## III. ANALYSIS

The bankruptcy code describes a "claim" as a "right to payment, whether or not such right is . . . disputed, [or] undisputed." 11 U.S.C. § 101(5)(A). "Within the context of a bankruptcy proceeding, state law governs the determination of property rights." *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1262 (10th Cir. 2012) (quoting *In re Mims*, 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010)). Accordingly, to determine whether Chase has a valid claim, the Court considers Colorado law, in particular the Colorado Uniform Commercial Code ("Colorado UCC"). *Id.*

Under Colorado law, an instrument that is "payable to an identified person may become payable to bearer if it is indorsed in blank pursuant to [Colo. Rev. Stat.] § 4-3-205(b)." Colo. Rev. Stat. § 4-3-109(c). Section 205(b) provides that, when an instrument is indorsed in blank, "an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Colo. Rev. Stat. § 4-3-205(b).

It is undisputed that the Note is endorsed in blank. *See* Docket No. 10-1 at 27; *see also* R. VI at 175 (bankruptcy court noting same). The dispute in this case centers on the fact that Chase is not in possession of the Note. The bankruptcy court found that Chase's claim was allowed based on Colorado's lost instrument statute. The lost

instrument statute provides:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

> (b) A person seeking enforcement of an instrument under subsection (a) of this section must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, section 4-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

Colo. Rev. Stat. § 4-3-309.

In order to enforce a claim under the lost instrument statute, Chase is required to prove the elements of the statute by "clear and convincing evidence." *Gooch v. Rodewald*, 432 P.2d 755, 756 (Colo. 1967) (quoting *Walker v. Drogmund*, 74 P.2d 1235 (Colo. 1937)). Debtors argue that the bankruptcy court erred when it found that Chase was in possession of the note and entitled to enforce it. Docket No. 18 at 32-46.

**A. The Bankruptcy Court's Factual Findings**

**_1. Evidence that Chase Possessed the Note_**

Debtors first argue that the bankruptcy court misapplied the Colorado UCC because "Chase Bank presented no competent evidence that it had in fact taken possession of the original [Washington Mutual] note." Docket No. 18 at 33. Specifically, debtors state that Chase offered "hearsay electronic business records" that

showed that Chase "had a copy (upon multiple copies) of the WaMu Note in its file." *Id.*

at 33-34.

Debtors' argument that the bankruptcy court "misapplied" the UCC attempts to

evade the clear error standard for factual findings. The bankruptcy court found that

> Chase produced convincing evidence the Note was scanned into its
> business records. The business records of Chase, kept in a vault in
> Louisiana and provided as exhibits, contained a copy of the Note. The
> original Note was removed from the vault and transferred to Chase's prior
> attorney, and was thereafter lost and has not been returned.
>     Specifically, the "scan date" for Chase's electronic records shows
> the original Note was scanned into its record-keeping system on
> September 17, 2009. The Court finds this business record, together with
> the testimony of Chase's representative regarding the procedures of
> creating the record, demonstrate Chase possessed the original Note in its
> Louisiana facility on that date.

R. VI at 176 (footnote omitted). In fact, debtors never argue that the bankruptcy court

committed "clear error" in making such findings. Nevertheless, the Court will review the

basis for the bankruptcy court's findings under the clear error standard.

At the hearing, Chase offered the testimony of Marilyn Lea. R. V at 731. Marilyn

Lea was employed by Chase as a mortgage banking research officer and testified that

she reviewed Chase's business records on a daily basis. *Id.* at 731, p. 90, ll. 10-19.

Ms. Lea testified about the manner in which the FDIC transferred documents to Chase,

*id.* at 737, p. 96, ll. 4-11, and testified regarding Chase's procedures for scanning

original notes. *See id.* at 758-59, pp. 117-18, ll. 19-25, 1-18. She further testified to the

authenticity of a screenshot showing that the Note was scanned into Chase's system on

September 17, 2009. *Id.* at 751, p. 110, ll. 15-21. The bankruptcy court found that Ms.

Lea was credible. R. VI at 177. Based on Ms. Lea's testimony, the bankruptcy court

admitted Exhibit L, the screenshot of the scanned Note, as a business record.  *Id.* at

756-57, pp. 115-16, ll. 18-25, 1; *see also* Docket No. 15-2 (Exhibit L).

Debtors argue that Ms. Lea's testimony did not lay a proper foundation for the

screenshot because Ms. Lea "never saw the original blank endorsed WaMu Note; she

never spoke with a person at Chase Bank who took possession of the original WaMu

Note; she was not the person who allegedly scanned in the original WaMu Note to

Chase Bank's system."  Docket No. 18 at 34.  Debtors' argument is misplaced.  A

business record can be admitted by "anyone who demonstrates sufficient knowledge of

the record keeping system that produced the document."  *Hardison v. Balboa Ins. Co.*,

4 F. App'x 663, 669-70 (10th Cir. Feb. 16, 2001) (unpublished).  Accordingly, Ms. Lea's

lack of personal knowledge with respect to the Note is irrelevant to the admissibility of

the screenshot.[5]

Debtors also argue that Exhibit L was admitted only for a limited purpose by the

bankruptcy court.  Docket No. 18 at 34.  The bankruptcy court ruled that it would admit

the screenshot "as a business record contained in the records of Chase Bank and [that

it] establishes that and nothing further."[6]  R. V. at 756-57, pp. 115-16, ll. 25, 1.  The

bankruptcy court's limitation is consistent with the purpose for which Chase offered the

---

[5]Debtors also argue that their expert established that the documents produced
by Chase were unreliable.  Docket No. 18 at 35.  This argument is discussed below.

[6]The bankruptcy court had previously ruled that it would admit a different exhibit
as a business record with the caveat that "it does not establish that it has been filed
with the appropriate public trustee.  It does not reflect anything else other than the fact
that this exists in the records of Chase Bank."  R. V at 749, p. 108, ll. 20-25.  The
bankruptcy court's ruling appear to reflect a limitation only on collateral effects from
possession of the Note.

screenshot: to establish that Chase had the Note in its files.

Debtors provide no basis to overturn the bankruptcy court's credibility determination regarding Ms. Lea. The Court finds that the bankruptcy court relied on competent evidence that Chase took possession of the Note in 2009 and did not err in concluding that Chase had met its burden of proof.

### 2. The Applicability of the PAA

Debtors next argue that, even if Chase had possession of the Note, it lacked authority to enforce the Note because Chase failed to comply with its agreement with the FDIC. Docket No. 18 at 37-41. Chase acquired Washington Mutual's assets from the FDIC pursuant to the PAA. R. IV at 294, ¶ 7. Debtors argue that section 3.3 of the PAA required a separate deed or bill of sale for each note. Docket No. 18 at 38.

Section 3.3 of the PAA provides:

> **Manner of Conveyance; Limited Warranty; Nonrecourse; Etc.**
> THE CONVEYANCE OF ALL ASSETS, INCLUDING REAL AND PERSONAL PROPERTY INTERESTS, PURCHASED BY THE ASSUMING BANK UNDER THIS AGREEMENT SHALL BE MADE, AS NECESSARY, BY RECEIVER'S DEED OR RECEIVER'S BILL OF SALE, "AS IS", "WHERE IS", WITHOUT RECOURSE AND, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS AGREEMENT, WITHOUT ANY WARRANTIES WHATSOEVER WITH RESPECT TO SUCH ASSETS, EXPRESS OR IMPLIED, WITH RESPECT TO TITLE, ENFORCEABILITY, COLLECTIBILITY, DOCUMENTATION OR FREEDOM FROM LIENS OR ENCUMBRANCES (IN WHOLE OR IN PART), OR ANY OTHER MATTERS.

Docket No. 14-3 at 14.

The bankruptcy court stated that the PAA was irrelevant to debtors' obligation on the Note "because the Note was indorsed in blank and Chase was the holder of the Note on the date of the bankruptcy provision." R. VI at 177. Debtors argue that the

PAA is relevant because Chase's failure to comply with the PAA makes it impossible to verify the chain of title.  Docket No. 18 at 38-39.

Debtors cite no Colorado law that supports their claim that a chain of title is relevant to the lost instrument statute where the underlying instrument is indorsed in blank.  A note indorsed in blank is enforceable by the bearer upon transfer.  Colo. Rev. Stat. § 4-3-205(b).  The testimony at the hearing supports the conclusion that the FDIC transferred the Note to Chase.  R. V at 737 p. 96, ll. 4-11 (discussing the process for transferring documents from the FDIC); R. V at 758, p. 117, ll. 19-20.  Chase thereby possessed the Note.

In addition, § 3.3 of the PAA addresses limitations on Chase's ability to seek recourse against the FDIC for defects in title; it does not describe the necessary paperwork to complete all valid transfers.  In fact, the clause limits itself to those conveyances where a receiver's deed or receiver's bill of sale is "necessary."  *Id.* Debtors cite several cases to support their argument that § 3.3 bars Chase's claim, but the factual circumstances of the cases are not analogous.  None of the cases address instruments payable to the bearer or rely on § 3.3 of the PAA to invalidate a claim.  *See Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 333-36 (Mich. 2012) (making no reference to § 3.3 and holding that defendant was required, under state statute, to show record of chain of title in order to foreclose on mortgage by advertisement); *Thomas v. State Bank & Tr. Co.*, 765 S.E.2d 443, 446 (Ga. Ct. App. 2014) (remanding for trial because a dispute of fact existed over title because of a lack of a chain of assignment).

The bankruptcy court did not err in finding that compliance with § 3.3 of the PAA is irrelevant to Chase's claim.

### 3. Whether Chase Proved the Loss of the Note

Debtors argue that Chase failed to prove loss of possession by clear and convincing evidence. Docket No. 18 at 47. Under Colorado law "the former existence, execution, delivery, loss, and contents" of a lost instrument must be proven by "clear and convincing evidence."[7] *Gooch*, 432 P.2d at 756 (quoting *Walker*, 74 P.2d 1235).

The bankruptcy court found that "[n]o evidence indicates, and, indeed, neither party suggests, that Chase transferred the original Note to another entity, or that the Note was lawfully seized by another entity." R. VI at 177. The bankruptcy court also stated that "there is no question that the original paper Note was lost, possibly in transmission to or from Chase's prior counsel." *Id.* at 178. The evidence at the hearing supported the bankruptcy court's conclusion that the Note is lost. *See* R. V at 782-83, pp. 141-42, ll. 23-25, 1-24 (discussing creation of affidavit of lost note relating to debtors' loan and stating that such an affidavit would be created "when it is learned that a note has been lost").

Debtors argue that Chase has failed to show that it sent the Note to its foreclosure counsel's firm. Docket No. 18 at 48. However, the bankruptcy court did not conclude that the Note was lost in the transfer to Chase's foreclosure counsel. R. VI at 178 (noting that it was "possibly" lost in transmission to or from Chase's prior counsel). Nor was Chase required to prove the manner of loss. The lost instrument statute requires proof that the loss was "not the result of a transfer by the person or a lawful

_____

[7]Debtors do not appear to claim that the bankruptcy court applied the wrong legal standard to Chase's proof that the Note existed. In any case, the Court has already found that the bankruptcy court's conclusions on that prong were adequately supported by the evidence.

seizure." Colo. Rev. Stat. § 4-3-309(a). The bankruptcy court concluded that there was no evidence in the record suggesting that the Note was transferred or seized. R. VI at 176. This evidentiary finding was supported by testimony regarding the transfer of the Note to foreclosure counsel and the subsequent acquisition of a lost instrument bond.[8] *See* R. V at 775-776, pp. 134-35, ll. 20-25, 1-24; 782-83, pp. 141-42, ll. 23-25, 1-24. The Court cannot conclude that these factual findings were clearly erroneous.

Debtors cite several cases to support their argument that Chase failed to show the manner in which it lost the Note. Docket No. 18 at 49-50. However, in each case, numerous defects prevented the party out-of-possession from enforcing the instrument. *See Dennis Joslin Co., LLC v. Robinson Broad. Corp.*, 977 F. Supp. 491, 494 (D.D.C. 1997) ("[P]laintiff in this case never had actual possession of the note, and plaintiff concedes that the note was lost while the FDIC—not plaintiff—was in possession."); *Beaumont v. Bank of New York Mellon*, 81 So. 3d 553, 555 (Fla. Dist. Ct. App. 2012) (bank offered no evidence of ownership in the note); *Premier Capital, LLC v. Gavin (In re Gavin)*, 319 B.R. 27, 32 (B.A.P. 1st Cir. 2004) (claimant "failed to produce any evidence of an assignment of the Note by Fleet to Sovereign"). Accordingly, these cases are distinguishable.

The Court finds that debtors have not shown that the bankruptcy court clearly erred in finding that Chase proved that it lost the Note, as required by the lost

---

[8]Debtors argue that the bankruptcy judge failed to apply the clear and convincing standard, but simply failing to state the evidentiary standard does not constitute grounds for reversal. *See*, *e.g., Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 967 (8th Cir. 2004); *Ramos v. Holder*, 385 F. App'x 695, 697 (9th Cir. June 28, 2010) (unpublished).

instruments statute.

## B. The Bankruptcy Court's Other Rulings

### 1. Shifting the Burden of Proof

Debtors dispute the bankruptcy court's ruling regarding the admissibility and reliability of Chase's evidence.[9]  Docket No. 18 at 41-45.  Debtors offered the testimony of Robert Byrnes, a "forensic computer data expert."  *Id.* at 44; R. V at 687.  Mr. Byrnes testified that, in order to verify the authenticity of Chase's business records, he would need to review an "original document that was preserved in a forensic manner."  R. V at 692, p. 51, ll. 11-18.  The bankruptcy court found that "Debtors' insistence Chase must produce metadata from its computerized document storage system indicating the exact date of the creation of each record is not reasonable under the circumstances."  R. VI at 176.  The court observed that "Byrnes did not state, nor did the Debtors indicate, the scan of the original Note had been fraudulently altered."  *Id*. at 177.  Instead, the court relied on Ms. Lea's testimony that "when she creates an image of a scanned document from Chase's electronic files, she has no ability to change any of the scan information."  *Id.*  Debtors state that "the Bankruptcy Court's finding that [their expert's] position was unreasonable effectively shifted the burden of proof."  Docket No. 18 at 45.

Ms. Lea testified to the infeasibility of modifying the business records offered as evidence at the hearing, R. V at 755, p. 114, ll. 9-10, and the bankruptcy court found Ms. Lea's testimony to be credible.  R. VI at 177.  The bankruptcy court was entitled to

[9]Debtors once again argue that Ms. Lea's lack of personal knowledge prevented the bankruptcy court from relying on her testimony or on the business records offered by Chase.  Docket No. 18 at 41-45.  Those arguments were discussed and rejected above.

rely on the testimony of Chase's witness in concluding that metadata was unnecessary to verify Chase's receipt of the Note.[10]

In addition, the bankruptcy court did not "shift [] the burden of proof" onto debtors. Docket No. 18 at 45. The Court relied on the evidence offered by Chase to conclude that Chase had possession of the Note.

### 2. The Bankruptcy Court's Failure to Impose a Negative Inference

Debtors argue that the bankruptcy court was required to draw a negative inference because Chase failed to produce documents in response to a subpoena and failed to produce "the original WaMu Note, to produce an unqualified assignment that was executed at the time of the PAA, or to produce a Receiver's Deed or Receiver's Bill of Sale." Docket No. 18 at 45-46.

Whether or not a negative inference is appropriate is within the sound discretion of the trial court. *Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 496 (10th Cir. 1985). The bankruptcy court awarded debtors $22,841.03 in attorney's fees as a sanction for Chase's failure to respond to discovery requests and follow court orders. R. VI at 179-182. The bankruptcy court was not required to impose a more severe sanction for Chase's conduct.

## IV. CONCLUSION

For the foregoing reasons, it is

---

[10]Debtors argue that, because the scanned Note's metadata shows it was created in 2015, it was not created "at or near the time of the event" and therefore cannot qualify as a business record. Docket No. 18 at 44. However, the metadata discussed by debtors merely shows that Ms. Lea accessed the record. The testimony at the hearing was consistent with the bankruptcy court's finding that the document was scanned into Chase's files in 2009. R. V at 758-59, pp. 117-18, ll. 19-25, 1-18.

**ORDERED** that the November 15, 2016 order [Docket No. 7-15 at 172-182] of

the United States Bankruptcy Court for the District of Colorado is **AFFIRMED**.  It is

further

**ORDERED** that debtors' Request for Oral Argument [Docket No. 22] is **DENIED**.

DATED March 2, 2018.

BY THE COURT:


 s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge